UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JEFFREY'S AUTO BODY, INC.,

                            Plaintiff,

          -against-                                    5:20-CV-0033 (LEK/TWD)

STATE FARM FIRE AND CASUALTY
COMPANY, *et al.*,

                            Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Jeffrey's Auto Body, Inc. brings this action against Defendants State Farm Fire

and Casualty Company and State Farm Mutual Automobile Insurance Company (collectively,

"Defendants"), asserting claims for: (1) breach of contract; (2) unjust enrichment; and (3)

violations of New York General Business Law § 349. Dkt. No. 2 ("Complaint").[1] This case was

removed from state court on the basis of diversity jurisdiction. See Dkt. No. 1 ("Notice of

Removal"). Presently before the Court is Defendants' motion to dismiss Plaintiff's Complaint for

failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 21

("Defendants' Motion to Dismiss"); 21-1 ("Defendants' Memorandum of Law"); 28 ("Plaintiff's

Opposition to Motion to Dismiss"); 31 ("Reply"). For the reasons that follow, Defendants'

motion is granted in part and denied in part.

_____

[1] This plaintiff filed a nearly identical complaint against these same two defendants in a
prior case. See Jeffrey's Auto Body v. State Farm Gen. Ins. Co., No. 12-CV-635, 2013 U.S. Dist.
LEXIS 26661, at *14 (N.D.N.Y. Feb. 27, 2013).

## II.     BACKGROUND

The following facts, alleged in the Complaint, are assumed to be true. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 76 (2d Cir. 2015).

Plaintiff, a corporation with its principal place of business in New York, is an automobile body shop located in Syracuse, New York. Compl. ¶ 1. Defendants are insurance companies organized under the laws of the state of Illinois, with their principal place of business in Bloomington, Illinois. Id. ¶¶ 2–3.

Between 2014 through 2019, 163 vehicles vehicle owners (the "Assignors") assigned to Plaintiff their property damage claims against Defendants and took their vehicles to Plaintiff for repairs. Id. ¶¶ 8, 9, 12. Each Assignor also made Plaintiff her Designated Representative, which authorized Plaintiff to negotiate settlements with Defendants under New York State regulations.[2] Id. ¶¶ 13–14.

According to Plaintiff, the vehicle owners fall into two categories: "First Party Assignors" and "Third Party Assignors."  Id. ¶¶ 9, 11. The First Party Assignors were insured by Defendants, whereas the Third Party Assignors were not, but because their vehicles were damaged by Defendants' insurance policy holders, Defendants accepted liability for the damages. Id. For both First Party and Third Party Assignors, Defendants were obligated under the insurance policies to provide full coverage that would restore the vehicles to the same condition they were in immediately prior to the accidents. Id. ¶ 12.

---

[2] See 11 N.Y.C.R.R. § 216.7(a)(2) ("Designated representative (DR) shall mean an insured's broker of record or an insured's intended repair shop designated by the insured to represent the insured shop in negotiations with the insurer in an attempt to settle the claim. Such designated representative may legally act on the insured's behalf").

Defendants provided payments on each of the claims for repairs arising out of the accidents. Id. ¶¶ 10–11. First, Defendants and Plaintiff exchanged estimates for the repairs. Id. ¶¶ 15, 17. Plaintiff then provided Defendants with a notice reflecting the deficiencies in the Defendants' estimates ("Notices"). Id. ¶¶ 16, 32. The amount reflected in the Notices was the difference between the Defendants' payment for the repairs and the amount necessary to restore each vehicle to its pre-accident condition. Id. ¶ 33. Plaintiff subsequently completed repairs. Id. ¶ 34. Plaintiff alleges that although it completed the repairs necessary to restore the vehicles "to the same condition they were in immediately prior to the loss, as closely as is humanly possible," Defendants failed to pay for the full repairs by covering the deficiencies. Id. ¶¶ 37–38, 43.

Plaintiff further describes, in detail, the ways in which Defendants "impeded and delayed fair settlement." Id. ¶ 35. According to Plaintiff, Defendants dictated and allocated price allowances, set arbitrary price caps, refused to enter into good-faith negotiations for labor rates, refused to pay itemized amounts for paint materials and parts, and failed to re-inspect the vehicles within the timeframes specified by the New York insurance regulations. Id. ¶¶ 17–30, 35.[3] As a result of these actions and inactions, "Defendants failed to negotiate in good faith pursuant [to] 11 NYCRR Part 216[.]" Id. ¶ 36.

The Complaint contains three causes of action. First, Plaintiff alleges that in failing to provide payments that would restore the vehicles back to their pre-accident condition, Defendants breached the insurance policies. Id. ¶¶ 42–43. Defendants' refusal to provide payments "damaged the First Party Assignors, who were billed for the full amount necessary to repair their [v]ehicles to their pre-accident condition." Id. ¶ 44. And as assignee of the First Party Assignors, Plaintiff claims that it is entitled to damages. Id. ¶ 46.

---

[3] See 11 N.Y.C.R.R. § 216.7(b)(7) (providing that the insurer must negotiate with the insured or the insured's designated representative in "good faith").

Second, Plaintiff asserts a claim for unjust enrichment. Id. ¶¶ 47–51. Based on the estimates Plaintiff provided to Defendants, they "knew Plaintiff expected compensation from Defendants in exchange for" the automobile repair services Plaintiff performed on each of the 163 vehicles at issue, including the vehicles of both First Party Assignors and Third Party Assignors. Id. ¶¶ 48–49. Defendants "accepted the benefit of these services in that the services were done to fulfill Defendants' obligation to return the [v]ehicles to their pre-accident condition." Id. ¶ 50. As a remedy, Plaintiff requests the reasonable value of its services. Id. ¶ 51.

Third, Plaintiff asserts a GBL § 349 deceptive acts and practices claim. Id. ¶¶ 52–62. As Plaintiff alleges, Defendants' consistent practice of "provid[ing] a lower estimate of the cost of repairs than that which is actually required to repair a given vehicle to its pre-loss condition" through the various cost-cutting measures outlined above, as well as Defendants' failure to negotiate in good faith as required by New York insurance regulations, constituted deceptive actions in violation of the statute. Id. ¶¶ 52–55. Defendants engaged in these practices, first, "in order to coerce the Assignors into accepting lower amounts in reimbursement than that to which they were entitled." Id. ¶ 58. Second, Defendants aimed to "influence repair shops to 'cut corners' and make improper and/or incomplete repairs," which resulted in consumers' "misperception . . . that a vehicle repaired to Defendants' specifications will be adequately and properly repaired." Id. ¶ 59. Plaintiff has been injured, as it has not been payed the full cost of repairs. Id. ¶ 61. Plaintiff requests actual damages. Id. ¶ 62.

## III.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

## IV.    DISCUSSION

### A.    Breach of Contract

The Court addresses, in turn: (1) whether Plaintiff states a breach of contract claim; and (2) whether the statute of limitations bars Plaintiff's claim.

#### 1.    Failure to State a Claim

"Under New York law, there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). "An insurance policy is to be interpreted by the same general

rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy . . . ." Secord v. Chartis Inc., No. 09-CV-9934, 2010 U.S. Dist. LEXIS 139852, at *25 (S.D.N.Y. Dec. 8, 2010). As the assignee, Plaintiff "moves into the shoes of the assignor, and thus may enforce the obligations of the other party to the contract, so long as the assignment agreement allows." Harner v. Allstate Ins. Co., No. 11-CV-2933, 2012 U.S. Dist. LEXIS 191060, at *15 (S.D.N.Y. Sep. 7, 2012) (internal quotation marks omitted); see also Citibank, N.A. v. Tele/Resources, Inc., 724 F.2d 266, 269 (2d Cir. 1983) ("Under New York law, an assignment is an agreement between the assignor and assignee which . . . transfers the assignor's contract rights to the assignee") (internal quotation marks omitted).

As an initial matter, Defendants note that Plaintiff does not explicitly state in its Complaint that it asserts a claim for breach of contract. Defs.' Mem. of Law at 5–6. But while Plaintiff does not specifically characterize the first cause of action as a breach of contract claim, Plaintiff's allegations make clear that it asserts this claim. Plaintiff states that "[e]ach of the First Party Assignors was in privity of contract with Defendants as a result of the Policies . . . ." and that "[p]ursuant to the Policies, . . . Defendants were obligated to make allowances," but "Defendants have refused to pay the itemized Deficiencies . . . ." Compl. ¶¶ 41–43. Defendants evidently inferred from this language that Plaintiff asserted a breach of contract claim, and the Court does as well. See Howell v. Am. Airlines, Inc., No. 05-CV-3628, 2006 U.S. Dist. LEXIS 89229, at *3 (E.D.N.Y. Dec. 11, 2006). Plaintiff "stated simply, concisely, and directly events that . . . entitled [Plaintiff] to damages from . . . [Defendants]." Johnson v. City of Shelby, 574 U.S. 10, 12 (2014). "Having informed . . . [Defendants] of the factual basis for [its] complaint, [Plaintiff] w[as] required to do no more to stave off threshold dismissal for want of an adequate

statement of [its] claim." <u>Id.</u> at 11; <u>see also</u> <u>Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.</u>, 786 F.3d 510, 517 (7th Cir. 2015) (holding that "[u]nder the modern regime of the Federal Rules, the complaint need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has 'substantive plausibility'") (quoting <u>Johnson</u>, 574 U.S. at 12).

Defendants argue, with respect to the first element, that the Court should dismiss Plaintiff's breach of contract claim, because Plaintiff does not adequately allege the existence of an agreement. Defs.' Mem. of Law at 6. Plaintiff does not attach any contract to its Complaint, nor quote the language of any contract; rather, Plaintiff simply alleges that Defendants were obligated to make allowances that would restore the vehicles to their pre-accident condition, and that Defendants refused to do so. Compl. ¶¶ 42–44. These allegations are insufficient, Defendants argue, because Plaintiff does not identify specific provisions of the contract that were breached. Defs.' Mem. of Law at 6.

"But the question is not whether the plaintiff has pointed to the specific provision it believes was breached; rather, the question is whether the allegations, taken as a whole, 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" <u>First Solar, Inc. v. Absolute Process Instruments, Inc.</u>, No. 17-CV-8518, 2018 U.S. Dist. LEXIS 21944, at *11 (S.D.N.Y. Feb. 7, 2018) (quoting <u>Twombly</u>, 550 U.S. at 545). "Reference to a specific contractual provision may sometimes be necessary to put the defendant on notice. Other times it may not." <u>First Solar, Inc.</u>, 2018 U.S. Dist. LEXIS 21944, at *11.

"In order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based." <u>Howell</u>, 2006 U.S. Dist. LEXIS 89229, at *9 (internal quotation marks omitted); <u>see also</u> <u>Wolff v. Rare Medium, Inc.</u>, 171 F.

Supp. 2d 354, 358 (S.D.N.Y. 2001) (holding that in pleading the elements of the contract, "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue"). "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim." Howell, 2006 U.S. Dist. LEXIS 89229, at *9–10. "However, the complaint must at least 'set forth the terms of the agreement upon which liability is predicated . . . by express reference.'" Id. at *10 (quoting Phx. Four, Inc. v. Strategic Res. Corp., No. 05-CV-4837, 2006 U.S. Dist. LEXIS 6512, at *10 (S.D.N.Y. Feb. 21, 2006)); see also Kilgore v. Ocwen Loan Servicing, LLC, 89 F. Supp. 3d 526, 533 (E.D.N.Y. 2015) (holding that "[t]he contract itself need not be attached to the complaint, but the pleading must at least set forth the terms by express reference to satisfy this requirement").

Here, although the Complaint does not quote verbatim any specific provision of the contract, Plaintiff has sufficiently pled the first element by alleging that the parties entered into an agreement and describing the provision of the agreement that Defendants allegedly breached. See Durham v. Metro. Grp. Prop. & Cas. Ins. Co., No. 16-CV-1643, 2017 U.S. Dist. LEXIS 112756, at *5 (D. Conn. July 20, 2017) (holding that even though the plaintiff's complaint lacked specific language from the insurance policy, the plaintiff satisfied the first element by alleging that an insurance policy was in effect and the policy required the defendant to provide coverage for the accident at issue); Wilk v. VIP Health Care Servs., No. 10-CV-5530, 2012 U.S. Dist. LEXIS 21630, at *10 (E.D.N.Y. Feb. 21, 2012) (holding that the plaintiff sufficiently alleged the existence of a contract based on the plaintiff's allegations that she entered into an oral agreement to perform work as a healthcare attendant in exchange for compensation); cf. Howell, 2006 U.S. Dist. LEXIS 89229, at *10 (holding that the plaintiff failed to allege the first element

when the complaint "d[id] not even identify the agreement at issue, much less indicate which terms in that agreement were allegedly breached").

Plaintiff also sufficiently alleges Assignors' performance of obligations under the contract. The Complaint states that the First Party Assignors were in privity of contract with Defendants with respect to the governing insurance policies and that "[a]t all times relevant to this Complaint, the relevant policies for each of the Defendants' insureds were in effect." Compl. ¶¶ 6, 41. The Complaint further states that Plaintiff completed the repairs on the vehicles. Id. ¶ 34. In combination, these allegations are sufficient. See Jeffrey's Auto Body v. State Farm Gen. Ins. Co., No. 12-CV-635, 2013 U.S. Dist. LEXIS 26661, at *14 (N.D.N.Y. Feb. 27, 2013) (holding that the automotive repair shop plaintiff adequately alleged performance under an insurance policy by alleging that the policy was in effect and that the plaintiff completed repairs on the vehicles).

Plaintiff's Complaint also sufficiently alleges breach. "[T]he complaint specifically states that Defendant was required by the policies to provide coverage for repairing each vehicle to its pre-accident condition, yet failed to do so." Id. at *14.

Moreover, Plaintiff adequately alleges damages by specifying that the amount stated in the Notices was the difference between what Defendants paid for the repairs and the amount that was necessary to restore the vehicles to their pre-accident condition. Compl. ¶ 33. Plaintiff further alleges that Defendants' refusal to pay this difference "damaged the First Party Assignors, who were billed for the full amount necessary to repair their [v]ehicles to their pre-accident condition." Id. ¶¶ 43–44. See Jeffrey's Auto Body, 2013 U.S. Dist. LEXIS 26661, at *15 (holding that the plaintiff satisfied this element because "the complaint allege[d] damages in

that it provide[d] the monetary difference between Defendant's offer to settle the claim and the amount Plaintiff claims was necessary to restore the vehicle to its pre-accident condition").

Accordingly, Plaintiff has sufficiently pled the elements of a breach of contract claim.

### 2. Statute of Limitations

Defendants contend that any claims with a date of loss before November 11, 2018 should be dismissed because the claims are brought beyond the contractual statute of limitations. Defs.' Mem. of Law at 6–7. The Court declines to give effect to any contractual statute of limitations provision at this stage, because doing so would require the Court to consider extrinsic material and resolve factual disputes.

Although the statute of limitations for breach of contract claims in New York State is six years, parties may contractually agree to shorten the applicable period of limitations. See N.Y. C.P.L.R. §§201, 213(2). Plaintiff does not allege in the Complaint that any insurance policy included a statute of limitations provision. See generally Compl. To prove that the parties contractually agreed to a one-year statute of limitations, Defendants attach an example State Farm policy, which provides that legal action may be brought against Defendants for physical damage coverage "if the legal action relating to the[] coverages is brought . . . within one year immediately following the date of the accident or loss." Defs.' Mem. of Law at 7; Ex. A at 31. Plaintiff argues that the Court should not consider Defendants' statute of limitations argument, because it would require the Court to consider extrinsic material, which Plaintiff states is improper in the context of a 12(b)(6) motion. See Pl.'s Opp'n to Mot. to Dismiss at 8.

"A complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense 'if the defense appears on the face of the complaint.'" Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322

F.3d 147, 158 (2d Cir. 2003) (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)). "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

"'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." International Audiotext Network v. American Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47–48 (2d Cir. 1991)); see also Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (holding that "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion"). "However, before materials outside the record may become the basis for a dismissal, several conditions must be met. For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Faulkner, 463 F.3d at 134; see also Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (holding that "[w]hen the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss") (quoting Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Faulkner, 463 F.3d at 134.

Here, the present record does not satisfy these conditions, because the parties disagree about which, if any, of the First Party Assignors entered into an insurance policy that included the statute of limitations provision. Pl.'s Opp'n to Mot. to Dismiss at 10.

Plaintiff, in response to Defendants' attempt to introduce this insurance policy, argues that Defendants did not institute the one-year statute of limitations until "approximately 2016" and that "[m]oreover, it is unknown if the new policy provision was rolled out all at once or only upon periodic review of the policies." Pl.'s Opp'n to Mot. to Dismiss at 8.

In their Reply, Defendants assert that although Plaintiff's counsel is mistaken in believing that the one-year statute of limitations period was only instituted in 2016, all claims from 2016 through November 11, 2018 should be dismissed in any case, because Plaintiff has conceded that a one-year statute of limitations was in effect as of 2016. Defs.' Reply at 3. Defendants, however, mischaracterize Plaintiff's representations. Plaintiff is unsure of whether "the new policy provision was rolled out all at once or only upon periodic review of the policies," and therefore has not conceded that the statute of limitations provision applies to all claims made in 2016 or later. Pl.'s Opp'n to Mot. to Dismiss at 8.

There is thus "[a] material disputed issue[] of fact regarding the relevance of the document." Faulkner, 463 F.3d at 134. Specifically, there is a dispute as to when State Farm adopted its one-year statute of limitations and to which First Party Assignors the insurance policy that Defendants attach applies, if it applies to any of them. Cf. Clybourn v. Spiderbands LLC, No. 18-CV-3688, 2018 U.S. Dist. LEXIS 209669, at *6 (S.D.N.Y. Dec. 12, 2018) (considering attached employment contract and emails because the plaintiff "explicitly referenced and relied heavily on these documents" *and* because "no party dispute[d] the authenticity, accuracy, or

relevance of the[] documents") (emphasis added). The Court will, therefore, not consider this insurance policy in adjudicating this motion.

In their Reply, Defendants also attach insurance policies signed at various dates by a sampling of First Party Assignors, in an attempt to demonstrate that the one-year statute of limitations bar does apply to all of the assigned claims. See Reply at 4; Dkt. Nos. 31-2 to -4. In doing so, Defendants improperly engage in a factual dispute, both by contesting the truth of Plaintiff's assertions in its response brief regarding the statute of limitations provision and, more fundamentally, by contesting the truth of the allegations in the Complaint, which omits any reference to the statute of limitations provision. And "factual disputes are not properly resolved on a motion to dismiss." Fed. Ins. Co. v. Gander & White Shipping, Inc., No. 19-CV-7209, 2020 U.S. Dist. LEXIS 119751, at *6 (S.D.N.Y. July 8, 2020); see also Kaplan, Inc. v. Yun, 16 F. Supp. 3d 341, 347 (S.D.N.Y. 2014) (holding that "[t]he Court cannot resolve . . . a factual dispute on a motion to dismiss but must take the plaintiffs' allegations as true"); Tower Props. LLC v. Vill. of Highland Falls, No. 14-CV-4502, 2017 U.S. Dist. LEXIS 17822, *13–14 (S.D.N.Y. Feb. 7, 2017) (holding that "[t]he Court cannot consider conflicting evidence on a motion to dismiss . . . ."); Faulkner, 463 F.3d at 134 (holding that extrinsic evidence can only be considered when there are "no material disputed issues of fact regarding the relevance of the document"). Therefore, the Court will not consider the insurance policies attached to the Reply.

In short, the viability of Defendants' statute of limitations affirmative defense is not apparent from the face of the Complaint or other materials that the Court is permitted to consider at this time. The Court thus declines to dismiss Plaintiff's breach of contract claim on statute of limitations grounds.

### B. Unjust Enrichment

Plaintiff asserts an unjust enrichment claim pertaining to repair services it performed for both First Party Assignors and Third Party Assignors. Compl. ¶¶ 47–51. Plaintiff's unjust enrichment claim is dismissed with respect to both sets of transactions, for different reasons with respect to each.

"In order to recover in *quantum meruit* under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (internal quotation marks omitted). *Quantum meruit* is an "obligation imposed by equity to prevent injustice[.]" IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142 (N.Y. 2009). A party may not recover under a *quantum meruit* theory if a valid and enforceable contract "governs the same subject matter as the *quantum meruit* claim." Mid-Hudson Catskill Rural Migrant Ministry, Inc., 418 F.3d at 175 (citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (N.Y. 1987)) (other citations omitted). Moreover, "[u]nder the theory of *quantum meruit*, if the services were performed at the behest of someone other than the defendant, the plaintiff must look to that party for recovery." JLJ Recycling Contrs. Corp. v. Town of Babylon, 302 A.D.2d 430, 431 (N.Y. App. Div. 2d Dep't 2003) (citations omitted).

As Plaintiff concedes, its unjust enrichment claim must be dismissed with respect to repairs to First Party Assignors' vehicles, because Plaintiff has sufficiently alleged that a valid and enforceable contract governs the same subject matter. See Mid-Hudson Catskill Rural Migrant Ministry, Inc., 418 F.3d at 175; Pl.'s Opp'n to Mot. to Dismiss at 12.

Plaintiff also fails to state an unjust enrichment claim pertaining to repairs to Third Party Assignors' vehicles, because "the services Plaintiff provided were rendered at the behest of the vehicles owners and not Defendant." Jeffrey's Auto Body, 2013 U.S. Dist. LEXIS 26661, at *17 (holding as much based on identical allegations, and collecting cases).

### C. GBL § 349

Plaintiff asserts a claim under GBL § 349 based on Defendants' allegedly deceptive claims practices. Compl. ¶¶ 52–62. Defendants' Motion to Dismiss is granted with respect to this claim.

GBL § 349 declares unlawful all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). "Section 349 governs consumer-oriented conduct and, on its face, applies to virtually all economic activity." North State Autobahn, Inc. v. Progressive Ins. Group Co., 102 A.D.3d 5, 11 (N.Y. App. Div. 2d Dep't 2012) (quoting Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 55 (N.Y. 1999)) (other citations omitted). To successfully assert a claim under General Business Law § 349(h), "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." City of New York v. Smokes-Spirits.Com, Inc., 12 N.Y.3d 616, 621 (N.Y. 2009).

Defendants argue, first, that their conduct was not consumer-oriented. See Defs.' Mem. of Law at 17 ("[Plaintiff] does not point to any representation that State Farm made *to an insured*.") (emphasis added). By Defendants' account, to the extent that State Farm made any misrepresentations, they were in Defendants' communications with Plaintiff regarding the repair costs Plaintiff requested in each individual case. See id. Any misrepresentations thus occurred in

the context of a series of discrete private, business-to-business contractual relationships. See id.; Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d 20, 25 (N.Y. 1995) ("Private contract disputes, unique to the parties . . . [do] not fall within the ambit of the statute."); Jeffrey's Auto Body, 2013 U.S. Dist. LEXIS 26661, at *21 ("A single shot transaction, which is tailored to meet the purchaser's wishes and requirements, does not, without more, constitute consumer-oriented conduct for the purposes of this statute.") (internal quotation marks and citations omitted).

But Plaintiff contextualizes these individual transactions within a pattern of behavior, and one directed at consumers. Plaintiffs allege that Defendants have systematically violated a standard form insurance policy issued to many similarly situated insureds, as a result of company policies that tend to result in undercompensation for repairs, with the cost difference or quality decline borne by insureds. This conduct is "consumer-oriented," because Defendants' acts and practices "have a broad impact on consumers at large." North State Autobahn, 102 A.D.3d at 12 (internal quotation marks omitted); see also id. (noting that "conduct has been held to be sufficiently consumer-oriented to satisfy the statute where it . . . constituted a standard or routine practice that . . . potentially affected similarly situated consumers," and collecting cases) (internal quotation marks and alterations omitted); Jeffrey's Auto Body, 2013 U.S. Dist. LEXIS 26661, at *22–23 (noting that "[w]here . . . a defendant enters into contractual relationship[s] with customers nationwide via a form contract and has allegedly committed the challenged actions in its dealings with multiple insureds, courts have held that such behavior affects the public generally and, therefore, satisfies the requirement of consumer-oriented conduct within the meaning of Section 349," and collecting cases).

Second, Defendants argue that Plaintiff fails to allege materially misleading conduct. As Defendant notes, in each transaction, Plaintiff alleges Defendants provided cost estimates by

which Defendants truthfully communicated how much they would pay for repairs requested, and Plaintiff then voluntarily conducted repairs with this knowledge. See Defs.' Mem. of Law at 17. And "there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed." Broder v. MBNA Corp., 281 A.D.2d 369, 371 (N.Y. App. Div. 1st Dep't 2001).

But the alleged misleading conduct is Defendants' representing to the insured in each insurance policy that they will cover the cost necessary to restore vehicles to pre-accident condition, while simultaneously maintaining claims practices that systematically result in undercompensation. See Compl. ¶¶ 17–30, 35, 58–59. The sort of conduct alleged here, a practice of denying coverage that is contractually due, has been held to be materially misleading. See, e.g., Joannou v. Blue Ridge Ins. Co., 289 A.D.2d 531, 532 (N.Y. App. Div. 2d Dep't 2001) (holding that "[a]n insurance carrier's failure to pay benefits allegedly due its insured under the terms of a standard insurance policy can constitute a violation of General Business Law § 349") (citations omitted); Acquista v. N.Y. Life Ins. Co., 285 A.D.2d 73, 82 (N.Y. App. Div. 1st Dep't 2001) (finding the second prong satisfied based on allegations that defendant insurance company "makes a practice of inordinately delaying and then denying a claim without reference to its viability"); Shebar v. Metro. Life Ins. Co., 25 A.D.3d 858, 858–59 (N.Y. App. Div. 3d Dept. 2006) (holding that the plaintiff satisfied the second prong based on allegations of defendant "not investigating claims for long term disability benefits in good faith, in a timely fashion, and in accordance with acceptable medical standards" for a certain class of insured, as this amounted to "a misrepresentation of the nature of the coverage being provided").

Third, Defendants contend that Plaintiff fails to satisfy the "injury" prong. Defendants argue that because Plaintiff alleges each Assignor's vehicle was ultimately returned to its pre-accident condition, Assignors suffered no injury. See Defs.' Mem. of Law at 18. Relatedly,

Defendants appear to argue that to the extent there was any injury, it was Plaintiff who was injured, through insufficient compensation for repairs, and not insureds. See id. ("The GBL is not the proper vehicle for generalized grievances about State Farm's disagreement with [Plaintiff] about appropriate repair costs . . . Rather, it is a consumer protection statute, and JAB has not alleged any facts that State Farm engaged in deceptive acts which injured any consumer.").

Defendants mischaracterize Plaintiff's allegations—perhaps understandably, as Plaintiff's allegations are somewhat ambiguous. Plaintiff alleges that Defendants' claim practices cause, alternately, two kinds of injuries to insureds. First, these practices encourage some repair shops to perform shoddy repairs in order to complete jobs within the covered cost, with the result that insureds do not receive the full value promised by Defendants. Compl. ¶ 59. Second, allegedly more honest repair shops, like Plaintiff, conduct partial repair jobs to the extent permitted by Defendants' coverage, and bill the customer for the difference, which also results in insureds receiving less coverage than Defendants represent they provide. Id. ¶ 44. Moreover, Plaintiff alleges that it has been injured directly, because it has not been paid the full cost of repairs, id. ¶ 61, even though it bills its customers for the difference in each instance.

The Complaint appears to present the following coherent narrative with respect to injury. Plaintiff has been injured because, although it has billed its customers for the difference between the cost of repairs and the amount Defendants covered, those customers have not satisfied their bill. Other, less honest repair shops complete repairs within the covered cost by "cutting corners" while misrepresenting to customers that repair jobs have restored their vehicles to pre-accident condition; but this has no relevance to Plaintiff's injury or the Assignors' injury, except as factual context that explains why Plaintiff has billed its customers to cover deficiencies. The

Assignors, for their part, also suffer injury in the form of monetary loss, as they now owe money to Plaintiff for the cost of repairs above what Defendants have covered.

Defendants also appear to misunderstand the governing law, in two ways. First, Plaintiff need not demonstrate that its customers' vehicles were incompletely repaired, as Defendants argue, because monetary loss can constitute injury for purposes of a GBL § 349 claim. See Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009) (noting that "a monetary loss is a sufficient injury to satisfy the requirement under § 349").

Second, despite Defendants' suggestion, the relevant question is not whether the Assignors have been injured, but whether Plaintiff has been injured. Under certain circumstances, the statute permits a non-consumer to assert a claim based on its own injury consequent to a consumer-directed deceptive practice. See Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc., 3 N.Y.3d 200, 207 (N.Y. 2004) (noting that "limit[ing] the scope of section 349 to only consumers" would be "in contravention of the statute's plain language permitting recovery by any person injured 'by reason of' any violation"). The Court of Appeals held in Blue Cross & Blue Shield of N.J. that a non-consumer may bring such a claim if, and only if, the plaintiff alleges "direct," rather than "derivative" injury. See id.

This brings the Court to a fatal defect in Plaintiff's allegations that Defendants have overlooked, namely that Plaintiff fails to allege direct injury. "An injury is indirect or derivative when the loss arises "solely as a result of injuries sustained by" the consumer. Id. at 205–08. Logically, then, a non-consumer plaintiff's injury cannot be considered direct if it is impossible for the plaintiff to be injured in the manner alleged without a consumer being injured. See, e.g., North State Autobahn, 102 A.D.3d at 17 (holding that non-consumer repair shop plaintiffs established injury, because "[t]he plaintiffs' alleged injury did not require a subsequent consumer

transaction"); IBM v. Platform Solutions, Inc., 658 F. Supp. 2d 603, 614 (S.D.N.Y. 2009) (holding that a non-consumer plaintiff failed to establish injury, because it "has suffered an injury under the General Business Law only if [consumers] also were injured").

In North State Autobahn, a group of repair shops successfully asserted a GBL § 349 claim based on allegations that the defendant insurance company ran a deceptive scheme similar to the one alleged in this case, see 102 A.D.3d at 8–9, but with one crucial and illustrative difference. The defendant made misrepresentations regarding the reasonableness of certain shops' asserted costs of repair and refused to pay the full cost of repair at those shops, in order to steer insureds to the defendant's favored repair shops, whose costs of repair the defendant generally covered in full. Id. at 9. The Second Department held that the plaintiffs established injury, because the plaintiffs' loss "was sustained when customers were unfairly induced into taking their vehicles from the plaintiffs' shop to a [favored] shop regardless of whether the customers ultimately ever suffered pecuniary injury as a result of the [insurance company] defendants' deception." Id. at 17. In other words, it was conceivable that the repair shop could be injured when the customer was not, specifically when a customer responded to the defendant's deception by taking her automobile to a favored shop, whose repair costs the defendant covered.

But there is no such possibility in this case. Plaintiff suffers monetary loss only if a customer loses money consequent to Defendants' practice of underestimating repair costs and leaving Plaintiff to cover to the difference; a situation in which Plaintiff is undercompensated while the Assignor is not is inconceivable. Plaintiff thus fails to adequately allege injury.

By its facts, Blue Cross & Blue Shield of N.J. reinforces this conclusion. In that case, the plaintiff insurance company asserted a GBL § 349 claim against a tobacco company, based on allegations that the plaintiff incurred costs in covering claims by insureds who were misled by

the tobacco company's advertisements. 3 N.Y.3d at 203–05. The Court of Appeals held that this injury was indirect, because the insurance company's loss was contingent upon an insured suffering a smoking-related illness. Id. at 207. In other words, as in the present case, without a consumer's injury, there could have been no injury to the non-consumer plaintiff.

In holding that Plaintiff fails to allege direct injury, this Court contradicts both two prior cases in this District and a recent Second Circuit decision. In Jeffrey's Auto Body v. State Farm Gen. Ins. Co. (N.D.N.Y. 2013) and Nick's Garage, Inc. v. Progressive Cas. Ins. Co. (N.D.N.Y. 2013), in which the same law firm filed essentially identical complaints as in this action, another court in this District found that the respective plaintiffs each sufficiently alleged direct injury at the motion-to-dismiss stage. See Jeffrey's Auto Body, 2013 U.S. Dist. LEXIS 26661, at *26; Nick's Garage, No. 12-CV-777, 2013 U.S. Dist. LEXIS 26659, at *26. At the summary judgment stage in Nick's Garage, the court granted the defendant's motion with respect to the plaintiff's GBL § 349 claim solely based on the plaintiff's failure to satisfy the "deceptive" prong. See Nick's Garage, Inc. v. Progressive Cas. Ins. Co., No. 12-CV-777, Dkt No. 116 at 19–27 (N.D.N.Y Mar. 31, 2015). The Second Circuit reversed the district court with respect to plaintiff's GBL § 349 claim, and in the process also found against defendant-appellees on their argument with respect to the injury prong, albeit without addressing the precise issue of whether the injury was direct. See Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 125 (2d Cir. 2017). Blue Cross & Blue Shield of N.J. clearly compelled a different result in each of these three prior cases, as it compels dismissal of Plaintiff's GBL § 349 claim here.

To the extent that this Court contradicts the Second Circuit's holding with respect to injury in Nick's Garage, this Court is entitled and indeed compelled to do so, because the New York Court of Appeals, and not the Second Circuit, is the ultimate authority in the interpretation

of New York state law. See Johnson v. Fankell, 520 U.S. 911, 916 (1997) ("Neither [the Supreme Court] nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the state.").

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, Defendants' Motion to Dismiss (Dkt. No. 21) is **GRANTED in part and DENIED in part**; Plaintiff's unjust enrichment and New York General Business Law claims are **DISMISSED**, and Plaintiff's breach of contract claim may proceed; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**[4]

DATED:      November 25, 2020
                 Albany, New York


Lawrence E. Kahn
Senior U.S. District Judge

---

[4]  Due to the delays and disruptions caused by the COVID-19 pandemic, some cases/motions were not disposed of prior to the end of the reporting period.